# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ALBERT L. LOPEZ,**

    **Plaintiff,**

**v.**                                                                                                                      **No. 17-cv-0750 SMV**

**NANCY A. BERRYHILL,**
**Acting Commissioner of the Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum [Doc. 17] ("Motion"), filed on November 20, 2017. The Commissioner responded on January 16, 2018. [Doc. 19]. Plaintiff replied on February 12, 2018. [Doc. 20]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 7]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet his burden as the movant to show that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that her decision was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability and disability insurance benefits on December 8, 2008. Tr. 110. He alleged a disability-onset date of December 1, 2003. *Id.* His claim has been denied three times by ALJs. Tr. 14–20 (first denial dated February 12, 2010), 395–402 (second denial dated October 25, 2013), 1038–57 (third denial dated January 13, 2016). This is his third appeal to federal court. *See* Tr. 430–48 (first federal court remand order dated June 5, 2012), 1105–21 (second federal court remand order dated November 19, 2014). ALJ Ann Farris held the third administrative hearing on October 21, 2015, in Albuquerque,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

New Mexico. Tr. 1038, 1058–82. Plaintiff appeared with his attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE") Karen N. Provine. *Id.*

ALJ Farris issued the third and most recent unfavorable decision on January 13, 2016. Tr. 1050. She found that Plaintiff met the insured status requirements through December 31, 2004. Tr. 1040. At step one she found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date (December 1, 2003) and his date last insured (December 31, 2004). Tr. 1040–41. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease and partial amputation of the left index and long fingers." Tr. 1041. She further found that Plaintiff's diverticulosis, hiatal hernia, dysthymia, post-traumatic stress disorder ("PTSD"), and alcohol use were not severe. *Id.*

At step three the ALJ determined that, through the date last insured, none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 1043–44. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 1044–48. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b); except that he must be allowed to alternate standing and sitting every 30 minutes; cannot use the left index finger or left third finger, of the non-dominant hand, for fingering; should avoid sudden loud noises; should have no interaction with the general public; is limited to simple work related decisions with few work place changes; and can have occasional and superficial interaction with coworkers.

Tr. 1044.

At step four the ALJ found that, through the date last insured, Plaintiff was unable to return to any of his past relevant work. Tr. 1048. The ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 1048–50. She

found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff requested review from the Appeals Council, but that request was denied on January 30, 2017. Tr. 1027–30. With an extension of time granted by the Appeals Council on June 21, 2017, Tr. 1023–24, Plaintiff timely filed the instant action on July 19, 2017, [Doc. 1].

## Analysis

The arguments and authorities presented by Plaintiff do not persuade the Court that remand is warranted. Plaintiff fails to show reversible error in the ALJ's evaluation of the combination of his impairments or in his social functioning. Similarly, Plaintiff fails to show any apparent conflict between the Dictionary of Occupational Titles ("DOT") and the RFC assessment. Accordingly, the Commissioner's final decision should be affirmed.

### Plaintiff fails to show reversible error in the ALJ's evaluation of his impairments in combination.

"[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (finding that the ALJ's discussion of the non-severe mental impairments might have been adequate but his conclusions were not supported by substantial evidence) (citing 20 C.F.R. § 404.1545(a)(2)); *see* 42 U.S.C. § 423(d)(1)(B) ("[T]he Commissioner . . . shall consider the combined effect of all of the individual's impairments . . ."); 20 C.F.R. § 404.1523(c) ("[W]e will consider the combined effect of all of your impairments . . .").

For example, in *Salazar v. Barnhart*, the Tenth Circuit Court of Appeals reversed an ALJ's decision, in part, for lack of discussion about the effects of the plaintiff's combination of

impairments. 468 F.3d 615, 621–22 (10th Cir. 2006). The ALJ essentially attributed all of the plaintiff's serious problems to her drug and alcohol use. He found her impairments to be "secondary to chronic polysubstance abuse" and that "without the effects of drug and alcohol abuse, [she] would not be disabled." *Id.* at 621. Against this backdrop, the court found reversible error in the ALJ's failure to discuss Plaintiff's borderline personality disorder at step three and in formulating the RFC assessment. The court was troubled because the borderline personality disorder may have accounted for the plaintiff's drug and alcohol abuse, as well as other serious problems. *Id.* at 621–22. Without any discussion of the combination of impairments (specifically the borderline personality disorder and the polysubstance abuse), reversal was required. *Id.* at 622.

Here, Plaintiff argues that "[t]he ALJ did not discuss the combined effects of the impairments and provided no support for her finding [at step three] regarding the combination of impairments." [Doc. 17] at 6. He argues that "[t]he ALJ provided no discussion regarding the effects of the combination of impairments on the RFC finding." *Id.* at 7. Plaintiff does not further develop his arguments. He does not explain what he believes is missing at step three or at the RFC assessment. Rather, Plaintiff complains generally that the ALJ's discussion was inadequate. *Id.* at 6. Plaintiff's position is not persuasive.

At step three, the ALJ explicitly found that, through the date last insured, Plaintiff "did not have an impairment *or combination of impairments* that met or medically equaled the severity of one of the listed impairments[.]" (Tr. 1043) (emphasis added). Further, in explaining her RFC assessment, the ALJ explicitly discussed the combination of Plaintiff's impairments:

> In sum, I have considered *all of [Plaintiff's] severe and nonsevere impairments* in determining [Plaintiff's RFC], and *appropriate limitations have been included to address [Plaintiff's]*

6

> *severe and nonsevere impairments*. Given [Plaintiff's] physical impairments, the [RFC] includes limitation to the light exertional level, a sit/stand option, and no fingering with the left index and long finger. Further, *given the combination of [Plaintiff's] alleged pain and his nonsevere mental impairments*, I find that [Plaintiff] can perform simple decisions with few workplace changes. Finally, viewing the evidence in the light most favorable to [Plaintiff] and given the evidence of post traumatic symptoms following the date last insured, the [RFC] also includes social limitations and limitations against loud sudden noises. The evidence of record does not support any greater limitations.

(Tr. 1048) (emphases added). Plaintiff fails to show that anything more was required.

<u>Plaintiff fails to show reversible error
in the ALJ's evaluation of his social functioning.</u>

Plaintiff argues that the ALJ erred in assessing his social functioning, specifically by failing to discuss whether Plaintiff could respond appropriately to supervision. [Doc. 17] at 7 (citing 20 C.F.R. § 404.1545(c), Social Security Ruling ("SSR") 96-8p). Defendant responds that even assuming such an error, Plaintiff was not prejudiced. [Doc. 19] at 14. The VE testified that a limitation to "occasional incidental interaction with supervisors" would have "no impact" on the jobs identified by the ALJ at step five. *Id.* (citing Tr. 1079). Therefore, Defendant argues that even if the ALJ had impermissibly failed to discuss the ability to respond appropriately to supervision, and even if the ALJ should have included a corresponding limitation in the RFC, the error would not be reversible. This is because, according to the VE's testimony, Plaintiff would still be capable of performing all the same jobs as identified at step five. *Id.*

Plaintiff replies that the VE later testified Plaintiff would not be capable of working if he were "off task 20% of the workday in responding appropriately to supervision[.]" [Doc. 20] at 2 (citing Tr. 1079–80). This argument is not persuasive for several reasons. First, the argument,

7

as written, is nonsensical. The Court fails to understand how one might be off-task 20% of the workday "in responding appropriately to supervision."

Second, perhaps Plaintiff intended to argue that his *in*ability to respond appropriately to supervision would cause him to be off-task 20% of the workday. If so, Plaintiff's argument still falls short because he fails to connect a limitation in responding appropriately to supervision with being off-task 20% of the workday. He did not make the connection to the VE at the hearing. The relevant testimony follows:

> Q If we take Hypothetical #1 and or add to that **only occasional incidental interaction with supervisors, any effect?**
>
> A It's not addressed in the DOT.
>
> Q So based upon your experience?
>
> A **No impact**.
>
> Q If we take Hypothetical #1 and add to that **being off task and responding appropriately to supervision, any effect?**
>
> A Could you quantify that?
>
> Q Oh, **for 20% of the workday**.
>
> A Okay.
>
> Q Thank you.
>
> A Also not addressed in the DOT, but based on experience and research, **that would eliminate the three occupations described as well as competitive employment**.

Tr. 1079–80 (emphases added). Counsel did not ask the VE to assume being off-task 20% of the time *as a result of* an inability appropriately to respond to supervision. Rather, counsel asked the VE to assume being off-task 20% of the workday but "responding appropriately to supervision." Plaintiff simply fails to connect between being off-task with a limitation in the ability to respond appropriately to supervision.

Third, the VE's testimony establishes that a limitation in the ability to respond appropriately to supervision would *not* affect Plaintiff's ability to perform the jobs identified at

8

step five.[3]  Initially, the VE testified that limiting Plaintiff to "only occasional incidental interaction with supervisors" would have "no impact" on his ability to perform the jobs identified at step five.  The fact that the VE subsequently testified that being off-task 20% of the workday "and responding appropriately to supervision" would eliminate all work does not change the result.

Finally, and most importantly, Plaintiff fails to point to anything in the record that suggests that his ability to respond appropriately to supervision is impaired or that he would be off-task 20% of the workday (for whatever reason).  He cites to no medical record, no treatment note, no source opinion, no testimony, nothing suggesting that the RFC should be different with respect to his ability to respond to supervision or that he would be off-task 20% of the workday. Plaintiff fails to show reversible error in the ALJ's evaluation of his social functioning.

<u>Plaintiff fails to show any apparent<br>conflict between the DOT and VE's testimony.</u>

"When there is an apparent unresolved conflict between VE [testimony] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [testimony] to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 SSR LEXIS 8, at *4–5.

Here, the ALJ found that Plaintiff could "not use the left index finger or left third finger, of the non-dominant hand, for fingering[.]"  Tr. 1044.  Plaintiff argues that this limitation conflicts with the DOT's descriptions for photocopying-machine operator and marker occupations, which both require frequent fingering, and the cleaner and polisher occupation, which requires occasional fingering. [Doc. 17] at 8 (citing DOT numbers 207.685-014,

---

[3] Therefore even assuming the ALJ erred in failing to discuss Plaintiff's ability to respond appropriately to supervision, the error did not prejudice Plaintiff.

9

209.587-034, and 709.687-010). Defendant argues that there is no conflict. [Doc. 19] at 16. The dispute, therefore, is whether there is an apparent conflict between the VE's testimony and the DOT. Disappointingly, neither party any cites case law or other authority on how the Court should determine whether there is a conflict. The Court has undertaken a review of the relevant authorities on its own.

On the one hand, in *Carson v. Barnhart*, the Tenth Circuit Court of Appeals found apparent conflicts between the RFC limiting the plaintiff to *sedentary* work and the VE's testimony that the plaintiff could perform jobs that were classified as *light*. The court also noted that the jobs identified by the VE required frequent reaching but the plaintiff could only reach occasionally with his dominant arm. 140 F. App'x 29, 37–38 (10th Cir. 2005).

On the other hand, in *Poppa v. Astrue*, the Tenth Circuit found no conflict between the DOT requirements for mail clerk (frequent reaching, handling, and fingering) and the plaintiff's "slightly below normal" fine and manual dexterity on one hand. 569 F.3d 1167, 1174 (10th Cir. 2009).

Similarly, in *Segovia v. Astrue*, the Tenth Circuit found no reversible error where the plaintiff was limited to occasional overhead reaching but the step-five jobs required frequent reaching generally, i.e., "in any direction". 226 F. App'x 801, 804 (10th Cir. 2007). The court explained that "even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching." *Id.* Moreover, the VE was aware of the plaintiff's limitation in overhead reaching and testified that she could perform the jobs consistent with the DOT. Finally, "[t]o the extent that there [wa]s any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. All kinds of implicit

10

conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Id.* (quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (ellipses and bracket omitted)).

Unlike the blatant conflict in *Carson* (sedentary versus light work), the "possible" conflict in this case is not obvious. Here, Plaintiff argues that his inability to finger with two fingers on his non-dominant hand conflicts with the frequent and occasional fingering requirements of the jobs identified at step five. This "possible" conflict is closer to the conflict argued in *Segovia*. As in *Segovia*, here, it seems to the Court that even jobs requiring occasional or frequent fingering (i.e., photocopying-machine operator, marker, cleaner/polisher) do not necessarily require fingering of the second and third fingers on the non-dominant hand. Most importantly, though, the VE in this case was aware of Plaintiff's fingering limitations and still testified that he could perform the duties of photocopying-machine operator, marker, and cleaner/polisher consistent with the DOT. Tr. 1072–73. In fact, the VE made a point to verify whether Plaintiff's fingering limitations were on his non-dominant hand. Tr. 1077–78. On confirming that the limitations were on the non-dominant hand, she explained that the DOT did not distinguish between dominant and non-dominant hands, and therefore, her testimony was "based on [her own] experience and research into the labor market." Tr. 1078. Under the circumstances, the Court finds that the VE's testimony did not conflict with the DOT.

## Conclusion

Plaintiff fails to show that ALJ's findings are not supported by substantial evidence. He also fails to show that the ALJ failed to apply the correct legal standards. Accordingly, remand is not appropriate.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing [Doc. 17] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**